MELVIN H. HERSCHLER, Petitioner v. COMMISSIONER OR INTERNAL REVENUE, Respondent
Herschler v. Commissioner
Docket No. 1179-82.
United States Tax Court
T.C. Memo 1984-569; 1984 Tax Ct. Memo LEXIS 103; 48 T.C.M. (CCH) 1475; T.C.M. (RIA) 84569; October 24, 1984. Bruce I. Hochman and Craig I. DeRoy, for the petitioner. Karen J. Simonson, for the respondent. DAWSON MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Chief Judge: This case was assigned to and heard by Special *104 Trial Judge John J. Pajak pursuant to the provisions of section 7456 of the Code and Rules 180 and 181. [1] The Court agrees with and adopts the Special Trial Judge's opinion, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE PAJAK, Special Trial Judge: This case is before the Court on respondent's Motion for Partial Summary Judgment and petitioner's Cross-Motion for Partial Summary Judgment. By Notice of Deficiency dated December 22, 1981, respondent determined deficiencies in petitioner's Federal income taxes as follows: Taxable Year Ending December 31
Deficiency
1972
$784.00
1973
1,170.00
1974
1,421.50
1975
3,531.00
1976
13,551.00
1977
2,667.00
The issue for decision is whether petitioner is estopped from denying that the statute of limitations with reference to 1972 through 1976 was not extended to December 31, 1981 so that the notice of deficiency issued on December 22, 1981 was timely. [2]
*105 FINDINGS OF FACT To the extent stipulated the facts are so found. Petitioner resided in La Palma, California, when his petition was filed. Petitioner has been a practicing accountant for approximately twenty-five (25) years. He has been involved in hundreds of Internal Revenue Service audits on behalf of his clients. In the course of those audits petitioner has reviewed many Form 872's - Consent Fixing Period of Limitations Upon Assessment of Income Tax. Consents Not In Issue
On October 6, 1978, respondent mailed to petitioner a Form 872 which would have extended the statute of limitations for assessment of Federal income tax for 1975 to April 30, 1980. Petitioner changed the date from April 30, 1980 to September 30, 1979 with a blue ballpoint pen by scratching out the "April" and the "1980" with the pen and writing "Sep" and "1979," and initialing the change. Petitioner signed the revised Form 872 on October 8, 1978. It was signed by respondent's agent, Gerald E. Ross, on October 16, 1978. On May 24, 1979, respondent mailed to petitioner another Form 872 to further extend the period for 1975 to April 30, 1980. Petitioner signed the form on or before *106 June 1, 1979, without modification. Respondent's agent, Nori Yamaguchi, signed the form on June 5, 1979. On January 28, 1980, respondent mailed to petitioner another Form 872 to extend the assessment period for 1975, 1976 and 1977 to December 31, 1982. Petitioner changed the date from December 31, 1982 to December 31, 1980. Petitioner also typed zeroes over a phrase in the text of the Form 872 so that it would read "the time for assessing the tax shall be further extended for the period in which the assessment is prohibited, 0 days thereafter" instead of "the time for assessing the tax shall be further extended for the period in which the assessment is prohibited and for 60 days thereafter" if a notice of deficiency is issued on or before the extended limitations date. Both changes were made with a typewriter and were not initialed by petitioner. Petitioner signed the modified Form 872 on February 3, 1980. It was signed by respondent's agent, Jerold M. Chang, on February 29, 1980. Consents In Issue
On August 5, 1980, respondent mailed to petitioner two separate Forms 872 to further extend the period for assessment for 1975 and 1976, respectively, to December 31, 1981. *107 The two-page forms appear to have been computer-generated by automatic typewriter and the date to which the period was to be extended was set forth at the top of each page and once in the text. The Forms 872 previously received by petitioner had been one page, pre-printed forms. Petitioner's wife, Faith Herschler, is an excellent typist and he instructed her to modify the date from December 31, 1981 to December 31, 1980 in the text of each form by use of a typewriter. The alteration of the date in the text only was carefully made by typing in an "O" in lieu of "1" in the original date of December 31, 1981. Petitioner did not initial either of the alterations or otherwise call attention to them. He did not modify the December 31, 1981 date where it appeared at the top of both pages of each form which continued to state that the statute of limitations would be extended to December 31, 1981. Petitioner made no change in either consent in the phrase "the time for assessing the tax will be further extended by the number of days the assessment was previously prohibited, plus 60 days" if a notice of deficiency is sent on or before the extended limitations date. On August 18, 1980, petitioner *108 signed both forms on the signature line which is three lines below the December 31, 1981 date on the second page of the form. During 1980, Charles W. Wong (Wong) was a revenue agent, Returns Program Management Staff, Examination Division, Internal Revenue Service, Los Angeles, California. During that year, Wong had the responsibility for monitoring impending expiration of statutes of limitations for assessments for approximately 10,000 Federal income tax returns, including the 1975 and 1976 returns of petitioner. Wong did not notice that in the text of page 1 of each of the Forms 872, petitioner had altered the date to which the statute of limitations was extended to read December 31, 1980, while petitioner left the original date of December 31, 1981 unchanged at the top of each of the two pages of both Forms 872. Wong assumed that the statute of limitations was extended to December 31, 1981, for 1975 and 1976 and relied on that assumption in not issuing a statutory notice of deficiency for those two years in 1980. If taxpayers failed to extend the statute of limitations on assessment, it was Wong's responsibility to cause respondent to issue a notice of deficiency *109 for years for which the statute of limitations was due to expire imminently. During August 1980, Joseph A. Vricella (Vricella), was a section chief, Returns Program Management Staff, Examination Division, Internal Revenue Service, Los Angeles, California. He had the responsibility to execute on behalf of respondent the Forms 872, "Consent to Extend the Time to Assess Tax." Vricella relied on Wong to review the Forms 872 returned by taxpayers and did not review them himself. On August 20, 1980, Vricella signed the two Forms 872 with respect to 1975 and 1976 which had been signed by petitioner. Respondent mailed the notice of deficiency for the tax years 1972 through 1977 to petitioner on December 22, 1981. OPINION Both parties have taken the position that there remains no genuine issue of fact and that partial summary judgment is warranted under Rule 121. We agree and rule for respondent. Section 6501(a) provides as a general rule that: "Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed." Section 6501(c)(4) provides for the extension of the period of limitation *110 by written consent of the parties. [3]
There is no question but that the period for assessment for the taxable years 1972 through 1976 was extended to December 31, 1980. The dispute between the parties is whether that period was extended to December 31, 1981 by the Forms 872 in issue. Since a mutual consent to extend the statute of limitations until December 31, 1981, is not apparent from the face of the Forms 872, respondent asserts that by his actions petitioner is estopped from denying that for 1975 and 1976 the statute of limitations was not extended to December 31, 1981. This Court recently set forth the circumstances *111 under which equitable estoppel would apply. In , the Court listed the following requirements: (1) there must be a false representation or wrongful misleading silence; (2) the error must originate in a statement of fact, not in opinion or a statement of law; (3) the one claiming the benefits of estoppel must now know the true facts; and (4) that same person must be adversely affected by the acts or statements of the one against whom an estoppel is claimed. [.] Respondentrelies on the Court's discussion of a taxpayer's duty to advise the Internal Revenue Service with respect to Forms 872 in . The Court there stated that: Here the facts show that petitioner on the advice of his accountant concurred in by his attorney deliberately sent a document to the Internal Revenue Service which he had his representatives knew contained an error which he and his representatives considered material. Neither petitioner nor his representatives directed the attention of the Internal *112 Revenue Service to the error in the instrument. Had no change been made in the instrument in the Internal Revenue Service, these facts might justify the conclusion that petitioner was estopped to deny that the document he submitted to the Internal Revenue Service was an extension of the statute of limitations on assessment for the year 1957 because of petitioner's misleading the respondent to respondent's detriment." Although the Court was not required to decide that issue in Cary, we do so here. Petitioner relies on which on the unusual and particular facts of that case held for the taxpayer, who had altered a special consent Form 872-A, since the Court did not believe the taxpayer attempted to mislead the Internal Revenue Service. The Court stated in Schenk that: If we believed that petitioner attempted to mislead the Internal Revenue Service and if the Commissioner had properly pleaded estoppel and carried his burden of proof, the result in this case would probably be otherwise. The result herein is otherwise because we believe the petitioner was attempting to mislead respondent. The other requirements *113 also have been satisfied in this case. Petitioner is no novice with respect to Internal Revenue Service audits and Forms 872. He has been a practicing accountant for about twenty-five (25) years and has been involved in hundreds of Internal Revenue Service audits on behalf of his clients and has reviewed many Forms 872. In his affidavit, petitioner states that his wife is an excellent typist and whenever "modifications, such as this Form 872, required careful typing" he instructed her to do the typing. The statement that careful typing is required to modify a Form 872 is belied by petitioner's modification of the first Form 872 with a blue ballpoint pen by scratching out "April" and "1980," inserting "Sep" and "1979" with the pen, and then initialing it. Petitioner obviously knew that respondent had executed a consent modified by petitioner without "careful typing." The consent modified by petitioner to limit the time to December 31, 1980 was accomplished by typing over the original text. Both the aforesaid forms were obviously altered. In each instance, respondent sent petitioner another consent requesting an extension of time prior to the expiration of time as limited *114 by petitioner. The situation is different with respect to the consents in issue. Here, petitioner modified the forms by carefully replacing the "1"s in the original date of December 31, 1981 requested by respondent with "0"s, but only in the text. Given the format of the new forms, these typewritten alterations were so subtle that it was obvious that they would be difficult to detect without extensive scrutiny. Since petitioner did not alter the original dates of December 31, 1981 at the top of each of the two pages of each consent, it is not surprising that respondent was mislead by petitioner's actions. Petitioner in his affidavit observes that the two Forms 872 in issue were substantially different in format from the previous Forms 872 which he had received. He subsequently claims he inadvertently neglected to instruct his wife "to modify the statute dates appearing at the top of both pages of each of the August, 1980 Forms 872 (those in issue)". If these forms were so different, it is only common sense to assume that an experienced accountant like petitioner would examine them carefully and fully modify them if he wanted to limit the extension of time. We also *115 observe that he did not call the modifications to the attention of respondent. Another factor to consider is that the signature line is three lines below the date December 31, 1981. When viewing that signature line it is difficult to understand how petitioner would not have seen that date. On the other hand, leaving that date at the top of the signature page as well as on the cover page was likely to mislead respondent. No change was made in the language providing that if a notice of deficiency is issued, the time would be extended for 60 days beyond the extended limitations period. We believe that this was done so that the careful modification of the date in the text of each consent would not be noticed by respondent. That respondent was mislead by petitioner is evidenced by the fact that respondent did not seek additional extensions before a shortened period of time as he had done when petitioner had made plain and obvious alterations to consents. It is clear from this that respondent relied to his detriment on the assumption that petitioner had agreed to extend the statute of limitations to December 31, 1981, when petitioner executed the consents in issue which *116 carried that date at the top of each page. We cannot bury our judicial head in the sand. When we examine the record in this case, we can only conclude that petitioner's careful correction of only one date without changing the date at the top of the two pages of each form was a wrongful misleading silence done so that he could make the argument that the statute had run as to certain years if respondent relied on the date at the top of each page. In short, deceit permeates the documents. The error originated in a statement of fact, not in opinion or a statement of law. The respondent reasonably relied on the December 31, 1981 date at the top of each page of each Form 872 and waited until just before that date to issue the notice of deficiency in this case. Lastly, respondent is adversely affected by the actions of petitioner. See and compare Since all the elements required for equitable estoppel have been established, petitioner is estopped from denying that for 1975 and 1976 the statute of limitations was not extended to December 31, 1981. The notice of deficiency issued on December 22, 1981 was timely for 1975 *117 and 1976, and for the reasons stated in footnote 2 infra was timely for 1972, 1973 and 1974. Petitioner's cross motion for partial summary judgment will be denied and respondent's motion for partial summary judgment will be granted. An appropriate order will be issued.
Footnotes
1. All section references are to the Internal Revenue Code of 1954 in effect during the taxable years in question unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioner had filed an application for tentative refund on April 15, 1976 and received a refund of the amounts set forth as deficiencies for 1972, 1973 and 1974 based on investment tax credit carrybacks from 1975. Respondent disallowed the investment tax credit for 1975, resulting in the deficiencies for 1972, 1973 and 1974. The statute of limitations issue for those three carryback years is determined by resolution of that issue for 1975. Section 6501(j). No question was raised as to the timely issuance of the notice of deficiency for 1977. Accordingly, our discussion will center on 1975 and 1976 and our decision will determine the limitations issue for 1972 through 1976.↩
3. Sec. 6501(c)(4) provides as follows: (4) EXTENSION BY AGREEMENT.--Where, before the expiration of the time prescribed in this section for the assessment of any tax imposed by this title, cxcept the estate tax provided in chapter 11, both the Secretary and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.↩